Milton C. REED, Chief Storekeeper, U. S. Navy, Plaintiff,

v.

Hon. W. B. FRANKE, Secretary of the Navy, Rear Admiral F. M. Hughes, Commandant, Fifth Naval District, and Commander Robert A. Mayo, U. S. Navy, Flag Administrative Unit, Commander-in-Chief Atlantic Fleet Headquarters, Defendants.

No. 3266.

United States District Court
E. D. Virginia,
Norfolk Division.

Oct. 25, 1960.

Vincent A. Bertolini, Norfolk, Va., for plaintiff.

Joseph S. Bambacus, U. S. Atty., Roger T. Williams, Asst. U. S. Atty., Richmond, Va., for defendants.

WALTER E. HOFFMAN, District Judge.

Plaintiff, a Chief in the United States Navy with 18 years of service to his credit, is under an enlistment which will not expire until March 21, 1962, at which time he will have served sufficient time to permit his retirement on pension. On May 24, 1960, plaintiff was notified by the defendant, Mayo, that action was contemplated by way of administrative discharge. Plaintiff submitted a letter in support of his contention that he was not an alcoholic, although he freely conceded that he "occasionally overindulged" and that, in December, 1959, and May, 1960, he was properly convicted on each occasion of operating an automobile under the influence of intoxicants which resulted in accidents occurring on government property. The special court martial on May 20, 1960, followed a collision between an automobile occupied by the Chief of Staff, SACLANT, and plaintiff. While the attendant publicity of this incident may have partially prompted, or otherwise indirectly brought about, further administrative action by way of discharge, it is of no consequence in the present proceeding.

Following his conviction by a summary court martial on December 14, 1959, plaintiff was restricted and forfeited $150 for one month. He was warned by his Executive Officer, Medical Officer, and Commanding Officer that he should abstain from drinking entirely, as he apparently was unable to drink moderately. Prior to December, 1959, plaintiff had been observed on several occasions as being under the influence of intoxicants and was warned by his Division Officer.

His second accident involving the Chief of Staff took place on April 11, 1960. Thereafter, and prior to the special court martial, plaintiff was hospitalized where his case was diagnosed as chronic alcoholism. The special court martial subsequently imposed a sentence of restriction to the limits of the CINCLANTFLT compound area for four months and forfeiture of $150 per month for a like period.

On June 10, 1960, the defendant, Mayo, having reviewed the record of plaintiff, including an incident which occurred on November 2, 1956,[1] recommended that plaintiff be discharged from naval service by reason of unsuitability. On July 6, 1960, the Chief of Naval Personnel directed that plaintiff be separated with a general discharge, under honorable conditions, by reason of unsuitability, with the "reason not to be shown" on said discharge. The authority for such action by the Chief of Naval Personnel rests in Article C–10310, BuPersManual and Code 289. This injunction action was filed on July 28, 1960, prior to the actual discharge of said plaintiff, and on July 29, 1960, District Judge Sterling Hutcheson entered a temporary restraining order which was thereafter continued pending final hearing.

The defendants, appearing in the name of the United States, have filed a motion for summary judgment or, in the alternative, a motion to dismiss. Plaintiff has likewise filed a motion for summary judgment. To determine the facts of the controversy, the Court heard evidence on the merits. Other than his drinking habits, there is nothing in the record reflecting that plaintiff is otherwise unsuitable for naval service. Plaintiff, while denying the diagnosis of alcoholism, admits that he has, from time to time, consumed alcoholic beverages to an excess. The medical records, upon which the recommendation of the defendant, Mayo, was in part based, furnish the best evidence of the diagnosis, and the testimony of plaintiff's friends and associates is not of great value in this regard.

While plaintiff was represented by counsel at the special court martial, no formal hearing was conducted on the administrative discharge. He was permitted, and availed himself of the opportunity, to transmit a letter outlining his objections to such administrative action.

Unlike the Army and Air Force, Congress has not seen fit to establish any procedure for discharges from the Naval service. Under 10 U.S.C. § 6011, it is provided that United States Navy Regulations shall be issued by the Secretary of the Navy with the approval of the President. Pursuant to this statute, the following regulation was regularly promulgated and approved: [2]

"C–10310. Discharge of Enlisted Personnel By Reason of Unsuitability.

"(1) Enlisted personnel may be separated, by reason of unsuitability, with an honorable or general discharge, as warranted by their *military record.* Such discharge, regardless of attendant circumstances, will be effected only when directed by or authorized by the Chief of Naval Personnel. Discharge by reason of unsuitability will not normally be issued in lieu of disciplinary action except upon the determination by the Chief of Naval Personnel that the interests of the service as well as the individual will best be served by administrative discharge. From time to time the Chief of Naval Personnel may issue special instructions to certain field activities for the elimination of the unsuitable among enlisted personnel.

"(2) Attention is directed to article C–10313 which prescribes the procedure for submission of reports and recommendations for discharge by reason of unsuitability.

---

1. This incident took place aboard a United Air Lines plane enroute from San Francisco to Chicago. For a period of approximately two hours prior to landing at Chicago, plaintiff had been screaming and was irrational. As the plane was circling to land at Midway Airport, plaintiff attempted to open the door of the airplane but was restrained. Upon admission to the hospital at Great Lakes, it was determined by final diagnosis that plaintiff was suffering from "Disorders, Psychotic, With Demonstrable Physical Etiology or Associated Structural Change in Brain, Delirium Tremens."

2. Counsel agree that the regulation was properly issued and approved.

"(3) Discharges by reason of unsuitability are effected to free the service of persons considered unsuitable for further naval service because of:

\* \* \* \* \* \*

"(e) Alcoholism: chronic, or addiction to alcohol (frequently a manifestation of a basic defect in personality development).

\* \* \* \* \*

"(g) Other good and sufficient reasons, as determined by the Chief of Naval Personnel."

In referring to article C–10313, it is noted that cases under consideration involving proposed general discharges, under favorable conditions, for unsuitability, unfitness, or misconduct, do not provide for a formal hearing. The enlisted person is entitled to be informed as to the basis for contemplated action, and afforded an opportunity to make a statement in his own behalf. In plaintiff's case, this was done, although plaintiff elected to submit a letter in lieu of making a statement. In a case involving an *undesirable* discharge by reason of *unfitness* or *misconduct*, the enlisted man is entitled to a hearing before a board of three officers, at which time he may be represented by counsel and appear in person.

■ The contemplated discharge in plaintiff's case deprives him of no inherent rights. It is a general discharge, under honorable conditions. The certificate of discharge will not reflect the basic reason of unsuitability. Plaintiff will retain all of his benefits, other than his right to re-enlist. This means, of course, that he cannot complete his twenty years' service and become eligible for retirement benefits. This is the crux of plaintiff's complaint. In all other respects plaintiff will continue to enjoy all of the rights and privileges accorded to veterans of the military service. According to Navy regulations, hearings are granted only when the enlisted personnel is faced with a forfeiture of his veteran's benefits.

Plaintiff does not contend that the Navy failed to follow the procedures outlined by articles C–10310 and C–10313. Although apparently not required so to do, the Chief of Naval Personnel referred plaintiff's record to an evaluation board for study and report. Counsel for plaintiff refer to this evaluation board as a "kangaroo court". The short answer to this contention is that it is not a court in any sense of the word; it merely served in an advisory capacity to the Chief of Naval Personnel who, by reason of his duties, is probably unable to give the individual attention to each particular case and must, of necessity, depend upon the evaluations of others who have more time to review the military record.

■ There is no merit to plaintiff's contention that the administrative discharge constitutes additional punishment for the offense involving plaintiff's conviction by the special court martial. It is plain that the Chief of Naval Personnel reviewed the plaintiff's entire naval record before acting. No particular emphasis was placed upon the incident of April 11, 1960, in determining the unsuitability of plaintiff.

■ At the outset it may be said, with little fear of contradiction, that there is no vested right to federal employment. Jason v. Summerfield, 94 U.S. App.D.C. 197, 214 F.2d 273, 277, certiorari denied 348 U.S. 840, 75 S.Ct. 48, 99 L.Ed. 662. There are, of course, exceptions to this rule as to certain positions not here applicable. Nor does plaintiff have any constitutional right to continue in the naval service until the expiration of his present enlistment. If the United States has breached its contractual agreement without sufficient cause, plaintiff has an adequate remedy at law to proceed in the Court of Claims for damages.

Congress has provided for a review of discharges and dismissals from military departments under 10 U.S.C. § 1553. This statute contemplates a mandatory hearing, upon request, *after discharge,*

before a board of five members, at which hearing the person requesting a review is permitted to appear in person or by counsel. The board is granted the authority, except in the case of a discharge or dismissal resulting from the sentence of a general court martial (not here applicable), to *change, correct,* or *modify* any discharge or dismissal, and to issue a new discharge in accord with the facts presented to the board. The findings of the board are subject to review only by the Secretary of the military department affected.

The Navy takes the position that this statute does not grant authority to the board, subject to review by the Secretary of Navy, to revoke any previously ordered discharge. Without commenting upon the correctness of this contention, the Navy does concede that, under 10 U.S.C. § 1553, the type of discharge could be modified so as to grant plaintiff an honorable discharge which would permit re-enlistment.

■ Under 10 U.S.C. § 1552, authority is given the Secretary of a military department to correct any military record when the Secretary considers it necessary to correct an error or remove an injustice. The procedure under 10 U. S.C. § 1552 is not mandatory and, while the matter is considered by a civilian board acting in behalf of the Secretary, there is no specific provision for a formal hearing permitting the presence of the serviceman or his counsel.

■ Thus it appears that the plaintiff herein, but for the pendency of the present proceeding, would be granted a general discharge under honorable conditions. He could then immediately apply for relief under § 1552 and, if the Secretary declined to convene the civilian board, could then endeavor to obtain the mandatory hearing under § 1553. These administrative remedies the plaintiff wishes to bypass. Clearly, this Court has no jurisdiction until all administrative remedies have been exhausted, unless it be shown that the administrative remedy is futile. Michaelson v. Herren,

2 Cir., 242 F.2d 693; Bernstein v. Herren, D.C.S.D.N.Y., 141 F.Supp. 78, affirmed on other grounds, 2 Cir., 234 F. 2d 434, certiorari denied 352 U.S. 840, 77 S.Ct. 60, 1 L.Ed.2d 57; Bolger v. Marshall, 90 U.S.App.D.C. 30, 193 F.2d 37. On this ground alone, the Court is without jurisdiction and the defendant's motion to dismiss must be granted.

■ Assuming arguendo the exhaustion of administrative remedies by plaintiff, we fail to see where any right of review lies with this Court under the existing facts. True, if Congress had prescribed certain required procedures which the Navy disregarded, the situation may then be different. Or if the Navy had failed to follow its own established regulations, the plaintiff may have cause to seek judicial review. These are procedural questions which are essentially protected by the due process clause of the Fifth Amendment. Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403. Likewise, if the discharge was predicated upon pre-service activities of the plaintiff and the Secretary acted in excess of his powers, judicial relief may be granted. Harmon v. Brucker, 355 U.S. 579, 78 S.Ct. 433, 2 L. Ed.2d 503.

Plaintiff, in part, relies upon Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377, in which the petitioner, not a member of the Armed Forces was denied access to much of the information adverse to him, had no opportunity to confront or cross-examine witnesses, and was deprived of his security clearance on the grounds of alleged Communistic associations and sympathies, according to information supplied by informants. Suffice it to say that the entire premise upon which Greene was decided is fundamentally different from the present case. Taking sentences out of context from this opinion would give some indication that the now plaintiff has an "argument", but the entire procedure in Greene is grounded upon the safeguards of confrontation and cross-examination in industrial clearance pro-

grams fashioned by the Department of Defense. The principles in Greene are inapposite.

■ The action of the Chief of Naval Personnel with respect to plaintiff's case was not the result of statements by informants. It was grounded upon his medical and naval record while in military service. While plaintiff contends that, on any action touching upon his general discharge under honorable conditions, he had the right to be confronted by the various medical officers making such findings of alcoholism in past years, the Court does not believe this to be an essential constitutional right in instances involving an honorable discharge where the facts are revealed by the military record.

■ In summary, plaintiff urges that the Navy must, as a condition precedent to granting an honorable discharge over objection of the serviceman, accord the individual a formal hearing wherein witnesses are present, the serviceman has the right of counsel, and the usual rules of cross-examination prevail. Congress has not so declared, and we do not believe that any such judicial pronouncement should be made which would result in a Pandora's Box of judicial review in all cases in which discharges are contemplated. It is a well-settled principle of law that the Armed Forces are free to regulate their internal affairs. Reaves v. Ainsworth, 219 U.S. 296, 31 S. Ct. 230, 55 L.Ed. 225; French v. Weeks, 259 U.S. 326, 42 S.Ct. 505, 66 L.Ed. 965.

Plaintiff suggests that the language of the opinion in McTernan v. Rodgers, D. C.Cal., 113 F.Supp. 638, supports his contention. An examination of that case reveals that a Naval Reserve officer had been honorably separated from active status on May 24, 1950. In August, 1951, the Navy notified the officer that an investigation had been conducted relative to his loyalty. Three months later the officer submitted a statement accompanied by his resignation as an officer in the United States Naval Reserve. The Navy conditionally rejected the resignation unless it was tendered in such form as to make his discharge other than honorable. Hearings were conducted and, prior to action, the officer obtained a restraining order. The Court dismissed the complaint for lack of exhaustion of administrative remedies but, in so doing, suggested that if the Navy pursued the summary proceedings against the officer, the proceedings would abort for constitutional infirmity as such action required that the Executive find that such proceedings were required for national security. Since the officer had tendered his resignation, it was highly unlikely that the contemplated action was essential to national security. If punitive action was sought by the Naval authorities, a hearing embracing the normal requirements of due process pursuant to law, free of constitutional defects, would be necessary. The facts in the instant case are unlike those in McTernan. The contemplated action against plaintiff is not punitive in nature, and this is so even though it may result in the loss of certain benefits which would accrue to plaintiff, if living, upon completion of twenty years' service. There is no guaranty afforded to service personnel that they may remain in the service until they reach retirement age. The retirement benefits command a corresponding duty on the part of the serviceman, and that is that he will conduct himself at all times in such a manner that he will be reasonably fit for military duty in the judgment of the military authorities.

Concluding that, in the first instance, plaintiff has failed to exhaust his administrative remedies and that the Court is without jurisdiction for this reason, the defendants' motion to dismiss must be granted. Assuming, however, that all administrative remedies have been exhausted, the Court would be required to find that there is no judicial power to review under the facts of this case.

The prior restraining orders are discharged.

Plaintiff's requests for a temporary and a permanent injunction are denied.

Present order on notice.