297 F.2d 17
 Milton C. REED, Chief Storekeeper, U. S. Navy, Appellant,
v.
Honorable W. B. FRANKE, Secretary of the Navy, Rear Admiral F. M. Hughes, Commandant Fifth Naval District, and Commander Robert A. Mayo, U. S. Navy, Flag Administrative Unit, Commander-in-Chief Atlantic Fleet Headquarters, Appellees.
 No. 8270.
 United States Court of Appeals Fourth Circuit.
 Argued March 30, 1961.
 Decided November 7, 1961.
 
 Vincent A. Bertolini, Norfolk, Va., for appellant.
 Roger T. Williams, Asst. U. S. Atty., Richmond, Va. (Joseph S. Bambacus, U. S. Atty., Richmond, Va., on brief), for appellees.
 Before SOBELOFF, Chief Judge, and SOPER and BOREMAN, Circuit Judges.
 BOREMAN, Circuit Judge.
 
 
 1
 Plaintiff, Milton C. Reed, challenges the right of certain officers of the United States Navy to separate him from naval service with a general discharge under honorable conditions. This appeal is from an order of the United States District Court for the Eastern District of Virginia setting aside prior restraining orders and denying plaintiff's request for a permanent injunction to prevent the defendants from so discharging him. For the reasons hereinafter stated, we are of the opinion that the District Court should be affirmed in its denial of a permanent injunction.
 
 
 2
 The pertinent facts are stated in the opinion of the District Court, reported at 187 F.Supp. 905. Reed, a Chief in the United States Navy with over eighteen years of service to his credit when this suit was brought, is under an enlistment which will not expire until March 21, 1962, at which time he will, unless sooner separated, have served sufficient time to permit his retirement with a pension. On May 24, 1960, Reed was notified by the defendant, Commander Mayo, that he was being considered for an administrative discharge by reason of unsuitability. Reed submitted a letter in support of his contention that he was not an alcoholic, and thus not unsuitable, although he freely conceded that he "occasionally overindulged" and that, in December 1959 and again in May 1960, he was properly convicted by court martial of operating an automobile when under the influence of intoxicants, such operations resulting in accidents occurring on Government property.
 
 
 3
 Prior to December 1959, on several occasions Reed had been observed under the influence of intoxicants and was warned by his Division Officer. Following his conviction by a summary court martial on December 14, 1959, plaintiff was restricted and forfeited $150 for one month. He was warned by his Executive Officer, Medical Officer and Commanding Officer that he should abstain from drinking alcoholic beverages since it was apparent that he was unable to drink moderately.
 
 
 4
 On April 11, 1960, an automobile driven by Reed while he was under the influence of intoxicants collided with an automobile occupied by Vice Admiral Sabin, Chief of Staff, Supreme Allied Command, Atlantic Fleet. Reed was hospitalized and his case was diagnosed as chronic alcoholism. On May 20, 1960, he was convicted by a special court martial and was sentenced to restriction within certain limits for four months and forfeiture of $150 per month for a like period. That sentence was later modified.
 
 
 5
 On June 10, 1960, Commander Mayo, having reviewed the record of plaintiff, including an incident which occurred on November 2, 1956,[1] recommended that the plaintiff be discharged from naval service by reason of unsuitability. On July 6, 1960, the Chief of Naval Personnel directed that plaintiff be separated with a general discharge, under honorable conditions, by reason of unsuitability with the "reason not to be shown" on the discharge certificate. On July 28, 1960, this injunction action was commenced, and the next day a temporary restraining order was entered which was thereafter continued pending final hearing.
 
 
 6
 The defendants, appearing in the name of the United States, filed a motion for summary judgment or, in the alternative, for dismissal. Plaintiff likewise filed a motion for summary judgment. To determine the facts, the court heard evidence and found as follows:
 
 
 7
 "* * * Other than his drinking habits, there is nothing in the record reflecting that plaintiff is otherwise unsuitable for naval service. Plaintiff, while denying the diagnosis of alcoholism, admits that he has, from time to time, consumed alcoholic beverages to an excess. The medical records, upon which the recommendation of the defendant, Mayo, was in part based, furnish the best evidence of the diagnosis, and the testimony of plaintiff's friends and associates is not of great value in this regard.
 
 
 8
 "While plaintiff was represented by counsel at the special court martial, no formal hearing was conducted on the administrative discharge. He was permitted, and availed himself of the opportunity, to transmit a letter outlining his objections to such administrative action." 187 F. Supp. at 907.
 
 
 9
 The District Court held that it lacked jurisdiction on two grounds, namely, (1) plaintiff failed to exhaust his administrative remedies, and (2) the facts of the case preclude the exercise of jurisdiction. Reed's principal contention is that an honorable discharge is a valuable property right[2] and that, under the Constitution, he may not be deprived of this right except in accord with due process of law as required by the Fifth Amendment. He asserts that a hearing prior to discharge, under the facts of this case, is a requirement of due process. The principal constitutional claim, as we understand it, is not that plaintiff has a right to stay in the Navy until he has served sufficient time to retire with a pension. Such claim, if asserted, would be frivolous and would provide no basis for the court's jurisdiction to interfere with the normal operations of the military services.
 
 
 10
 Plaintiff cites Harmon v. Brucker, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958), and Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508, rehearing denied, 346 U.S. 844, 74 S.Ct. 3, 98 L.Ed. 363 (1953), in support of his contention that the court below had jurisdiction. In both of these cases, however, all other possible remedies had been exhausted prior to invoking jurisdiction of the District Court. In Harmon v. Brucker, supra, the Supreme Court construed language in an Army regulation which had been previously construed by the Secretary of the Army in a manner beyond his statutory grant of authority. It is plain that there was no reason for judicial action until after there had been an administrative construction of the regulation. In reversing the lower courts, which had held that the District Court lacked jurisdiction, the Supreme Court said, 355 U.S. at 582, 78 S.Ct. at 435:
 
 
 11
 "* * * The District Court had not only jurisdiction to determine its jurisdiction but also power to construe the statutes involved to determine whether the respondent did exceed his powers. If he did so, his actions would not constitute exercises of his administrative discretion, and, in such circumstances as those before us, judicial relief from this illegality would be available. Moreover, the claims presented in these cases may be entertained by the District Court because petitioners have alleged judicially cognizable injuries. Cf. Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 159, 160 [71 S.Ct. 624, 95 L.Ed. 817] * * *."
 
 
 12
 Though there is no majority opinion in Burns v. Wilson, supra, the opinion written by Chief Justice Vinson and concurred in by three other justices states that District Courts have authority to protect a person's constitutional rights if the military authorities fail to protect them. That was a habeas corpus proceeding, however, and quite different factually from the instant case.
 
 
 13
 The District Court below had jurisdiction to determine its jurisdiction and also to decide the merits of plaintiff's claim of violation of constitutional rights. If the claim were well founded, the Navy would have no authority to proceed with the discharge as contemplated, and judicial relief from this illegality would be available. The constitutionality of the discharge procedure is a justiciable issue but once the plaintiff's claim is found and declared to be without merit, the discharge procedure may continue as before. Here, as in Harmon v. Brucker, there is no direct judicial review of the administrative proceedings except insofar as necessary to determine the legality of prescribed administrative procedure. It is the basic procedure that is attacked and which may be reviewed.
 
 
 14
 The District Court cited three cases to support its holding that it had no jurisdiction: Michaelson v. Herren, 242 F. 2d 693 (2d Cir. 1957); Berstein v. Herren, 141 F.Supp. 78 (S.D.N.Y.), affirmed on other grounds, 234 F.2d 434 (2d Cir.), certiorari denied, 352 U.S. 840, 77 S.Ct. 60, 1 L.Ed.2d 57 (1956); and Bolger v. Marshall, 90 U.S.App.D.C. 30, 193 F.2d 37 (D.C.Cir.1951). None of these cases involves a substantial constitutional claim[3] and each is thus distinguishable from the instant case. It is true that dicta in District Judge Ryan's opinion in Berstein v. Herren support the contention that the District Court in this case lacked jurisdiction. We do not, however, consider that case controlling or persuasive. The Court of Appeals, in reviewing the District Court's judgment dismissing the complaint and granting defendant's motion for summary judgment, affirmed solely on the ground that indispensable parties to the action were not before the court.
 
 
 15
 We conclude that, where there is a substantial claim that prescribed military procedures violate one's constitutional rights, the District Courts have jurisdiction to resolve the constitutional questions. See Estep v. United States, 327 U.S. 114, 120, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Heikkila v. Barber, 345 U.S. 229, 234-5, 73 S.Ct. 603, 97 L.Ed. 972, rehearing denied, 345 U.S. 946, 73 S.Ct. 828, 97 L.Ed. 1371 (1953) (dictum); cf. Harmon v. Brucker, 355 U.S. 579, 78 S. Ct. 433, 2 L.Ed.2d 503 (1958); American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 108, 23 S.Ct. 33, 47 L.Ed. 90 (1902).
 
 
 16
 Plaintiff argues that his right of review is derived from the Administrative Procedure Act, 60 Stat. 237 (1946), as amended, 5 U.S.C.A. §§ 1001-1011. We do not think that Act is relevant here. This is an injunctive proceeding to prevent alleged injury resulting from administrative action purportedly violating plaintiff's constitutional right. The District Court is not called upon in the instant case to directly review administrative action, as is contemplated by the Act. The general equity jurisdiction of the court is, instead, invoked to determine whether the defendants have the constitutional right, in the instant circumstances, to proceed with the discharge of plaintiff from the Navy.
 
 
 17
 Congress has not expressly established any procedure for discharges from the naval service. It was determined by the defendants that Reed was to be discharged under Navy Regulation C-10310,[4] issued by the Secretary of the Navy. Reed contends that naval regulations tions may be issued only with approval by the President and that this regulation was not so approved. Though the District Court indicated in a footnote to its opinion that counsel had agreed that the regulation was properly issued and approved, plaintiff's counsel, in argument before this court, disclaimed any such agreement and insisted that he had agreed only that the regulation had been published in the Federal Register. He denied any legal efficacy of the regulation beyond that attached to publication in the Federal Register. After the oral argument, we permitted counsel on each side to submit memoranda on the issue of the validity of the regulation. Unfortunately, the memoranda were not of material assistance and independent research was required.
 
 
 18
 On September 10, 1959, the challenged regulation[5] was issued and promulgated by the Secretary of the Navy and signed by Chester Ward, Rear Admiral United States Navy, Judge Advocate General of the Navy. The regulation was filed with the Federal Register on September 15, 1959, and published therein the next day. Cited by the Navy as authority for the regulations of which C-10310 is a part are Rev.Stat. § 161 (1875), 5 U.S.C.A. § 22, 10 U.S.C. § 1162 and ch. 569 (§§ 6291-6298) (1958). Only one of these cited sections[6] has any pertinence to the regulation under consideration, namely, Rev.Stat. § 161 (1875) as amended by 72 Stat. 547 (1958), 5 U.S.C.A. § 22, which reads as follows:
 
 
 19
 "The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it. This section does not authorize withholding information from the public or limiting the availability of records to the public."
 
 
 20
 The word "department" as used in 5 U.S. C.A. § 22 refers to "executive" departments of which the Department of Defense is one. 63 Stat. 579 (1949), 5 U.S. C.A. § 1; Rev.Stat. § 159 (1875) as amended, 5 U.S.C.A. § 2. "Department" in that section does not refer to "military" departments such as the Department of the Navy. See 63 Stat. 579 (1949), 5 U.S.C.A. § 171; 10 U.S.C. § 101(7) (1958) and compare with the immediately preceding citations. In March 1959 and some months prior to the issuance of the regulation here attacked, the Department of Defense had issued regulations which, according to the Federal Register, were approved by the Secretary of Defense on January 14, 1959, 24 Fed.Reg. 1704-06 (1959).[7] These Department of Defense regulations are the "parent" of the Navy regulation presently under consideration, and the Navy regulations of which C-10310 is a part also cite 5 U.S.C.A. § 22, among other statutes not pertinent here,[8] for their authority.
 
 
 21
 Counsel for both parties apparently disregarded 5 U.S.C.A. § 22 as the authority for pertinent Navy Regulation C-10310 and assumed that this regulation is authorized by 10 U.S.C. § 6011 (1958), which reads as follows:
 
 
 22
 "United States Navy Regulations shall be issued by the Secretary of the Navy with the approval of the President."
 
 
 23
 At no place is 10 U.S.C. § 6011 cited as authority for either the general regulations of the Department of Defense or the more specific regulations issued by the Secretary of the Navy. The Department of Defense regulations, § 44.3, 24 Fed.Reg. at 1705 (1959), authorized the issuance of implementing regulations by each of the Armed Forces, and the Navy regulation in question was issued in accordance with the earlier Department of Defense regulations dealing with administrative discharges.[9]
 
 
 24
 Under 5 U.S.C.A. § 22, department heads are authorized to issue regulations for, among other things, the government of their respective departments. The Constitution of the United States, article I, section 8, gives Congress the authority "To make Rules for the Government and Regulation of the land and naval Forces." (Emphasis added.) According to the congressional declaration of purpose in 72 Stat. 514 (1958), 50 U.S. C.A. § 401, legislation creating the Department of Defense (63 Stat. 579 (1949), 5 U.S.C.A. § 171), was enacted "to provide for the establishment of integrated policies and procedures for the departments, agencies, and functions of the Government relating to the national security." Thus, by reading the constitutional and statutory provisions together, it is clear that the Department of Defense and its Secretary (63 Stat. 580 (1949), 5 U.S.C.A. § 171a), are empowered to make rules for the government of the Armed Forces. It is our view that the discharges of enlisted military personnel fall within the purview of the congressional grant of power in 5 U.S.C.A. § 22. It is thus appropriate for the Secretary of Defense to issue regulations under 5 U.S.C.A. § 22, dealing with such discharges. Pertinent regulations were issued in March 1959, as before noted, and provided for the issuance of implementing regulations by each of the Armed Forces within ninety days after the date of issue of the Department of Defense regulations.[10]
 
 
 25
 Congress has provided authority in 63 Stat. 581 (1949), 5 U.S.C.A. § 171a (f), for the Secretary of Defense to delegate some of his powers:
 
 
 26
 "The Secretary of Defense may, without being relieved of his responsibility therefor, and unless prohibited by some specific provision of this Act or other specific provision of law, perform any function vested in him through or with the aid of such officials or organizational entities of the Department of Defense as he may designate."
 
 
 27
 Since there is no apparent prohibition of authority to delegate 5 U.S.C.A. § 22 functions, the Secretary of Defense is empowered to delegate, specifically to the Department or Secretary of the Navy (an "organizational entity" and official of the Department of Defense, respectively, 63 Stat. 579 (1949), 5 U.S.C.A. § 171; 10 U.S.C. § 5031 (1958)), and to others, authority given to him (Secretary of Defense) under 5 U.S.C.A. § 22 to issue and promulgate regulations dealing with the discharge of enlisted military personnel. In the instant case, we conclude that Navy Regulation C-10310, issued by the Secretary of the Navy, comes within the scope of 5 U.S.C.A. § 22 and the Department of Defense regulations dealing with Administrative discharges. However, another step is to be considered in determining the ultimate validity of the regulation.
 
 
 28
 Navy Regulation C-10310 must also comply with 10 U.S.C. § 6011 even though that statute, which provides that Navy regulations must be approved by the President, is not cited by the Secretary of the Navy as authority for the regulation in question.
 
 
 29
 Congress enacted 3 U.S.C. § 301 (1958), effective October 31, 1951, expressly authorizing the President to delegate certain functions:
 
 
 30
 "The President of the United States is authorized to designate and empower the head of any department or agency in the executive branch, or any official thereof who is required to be appointed by and with the advice and consent of the Senate, to perform without approval, ratification, or other action by the President (1) any function which is vested in the President by law, or (2) any function which such officer is required or authorized by law to perform only with or subject to the approval, ratification, or other action of the President: Provided, * * * Such designation and authorization shall be in writing, shall be published in the Federal Register, shall be subject to such terms, conditions, and limitations as the President may deem advisable, and shall be revocable at any time by the President in whole or in part."
 
 
 31
 On July 1, 1955, President Eisenhower issued Executive Order No. 10621, published in 20 Fed.Reg. 4759, pp. 82-83 of the United States Code, following 3 U.S. C. § 301 (1958), and in the 1960 Supplement to 3 U.S.C.A. § 301, pp. 156-57, the pertinent part of which follows:
 
 
 32
 "Sec. 2. The Secretary of Defense, and, as designated by the said Secretary for this purpose, the Deputy Secretary of Defense and any of the Assistant Secretaries of Defense, are hereby designated and empowered to perform the following-described functions of the President without the approval, ratification, or other action of the President:
 
 
 33
 (a) The authority vested in the President by section 1547 of the Revised Statutes of the United States [See section 6011 of title 10, Armed Forces] to approve alterations made by the Secretary of the Navy in Navy Regulations.
 
 
 34
 (b) * * *."
 
 
 35
 It is noted that this Order dealt with power granted in Rev.Stat. § 1547 (1875),[11] which, like 10 U.S.C. § 6011, requires presidential approval of Navy regulations. The latter section is part of a revision Act of August 10, 1956 (70A Stat. (1956)), which repealed Rev.Stat. § 1547 (1875),[12] mentioned in the President's Executive Order. Section 49 of this Act, however, provides a saving clause; subsection (b) thereof, at 70A Stat. 640, 10 U.S.C.A. note preceding section 1, states:
 
 
 36
 "References that other laws, regulations, and orders make to the replaced law shall be considered to be made to the corresponding provisions of [the new law]."
 
 
 37
 Thus, 10 U.S.C. § 6011 can be read into the Executive Order 10621 in place of Rev.Stat. § 1547 (1875), and the power and authority of the President to approve Navy Regulations is delegated to the Secretary of Defense.
 
 
 38
 As indicated above, the Secretary of Defense approved the regulations entitled "Subchapter C — Military Personnel; Part 44 — Administrative Discharges," 24 Fed.Reg. 1704 et seq. (1959), on January 14, 1959; section 44.3 (24 Fed. Reg. at 1705) thereof requires each of the Armed Forces to which the regulations are applicable[13] to issue appropriate regulations under this part (i. e., Part 44). The regulation under which defendants have ordered Reed's discharge, C-10310, was issued by the Navy to implement the earlier Department of Defense regulations, as we have shown, applicable specifically to Navy and Marine Corps personnel. Thus, Navy Regulation C-10310 is within the scope of and implements the Department of Defense regulations and was approved by the Secretary of Defense pursuant to the power delegated to him by 3 U.S.C. § 301 (1958) and Executive Order 10621. The regulation thus complies with 10 U.S.C. § 6011, requiring approval of the President, and is valid.
 
 
 39
 Furthermore, there is a presumption, though rebuttable, that regulations published in the Federal Register are valid. 49 Stat. 502 (1935), 44 U.S.C.A. § 307. There is also a presumption, in the absence of clear evidence to the contrary, that official action taken has been duly exercised. United States v. Chemical Foundation, Inc., 272 U.S. 1, 14-15, 47 S.Ct. 1, 71 L.Ed.2d 131 (1926); Shafer v. United States, 229 F.2d 124 (4th Cir.), certiorari denied, 351 U.S. 931, 76 S.Ct. 788, 100 L.Ed. 1460 (1956).
 
 
 40
 In addition to the above stated presumptions, regulations issued by the heads of executive departments under 5 U.S.C.A. § 22 are presumed valid. See Edwards v. Madigan, 281 F.2d 73, 77 (9th Cir. 1960). It was held in Boske v. Comingore, 177 U.S. 459, 470, 20 S.Ct. 701, 706, 44 L.Ed. 846 (1900), that such a regulation
 
 
 41
 "* * * should not be disregarded or annulled unless, in the judgment of the court, it is plainly and palpably inconsistent with law. Those who insist that such a regulation is invalid must make its invalidity so manifest that the court has no choice except to hold that the Secretary has exceeded his authority and employed means that are not at all appropriate to the end specified in the act of Congress."
 
 
 42
 Boske deals with a regulation issued by the Secretary of the Treasury pursuant to Rev.Stat. § 161 (1875), the predecessor of 5 U.S.C.A. § 22 (the former is exactly the same as the latter except that the last sentence of the latter was added in 1958), but the language quoted above from Boske is applicable to any regulation issued under the authority of that section. See United States ex rel. Touhy v. Ragen, 340 U.S. 462, 469, 71 S.Ct. 416, 95 L.Ed. 417 (1951); McDonald v. Lee, 217 F.2d 619 (5th Cir. 1954), vacated and petition for habeas corpus dismissed on ground that the cause was moot, 349 U.S. 948, 75 S.Ct. 893, 99 L.Ed. 1274 (1955); Carter v. Forrestal, 175 F.2d 364 (D.C. Cir.), certiorari denied, 338 U.S. 832, 70 S.Ct. 47, 94 L.Ed. 507 (1949); Fussell v. United States, 100 F.2d 995 (5th Cir. 1939).
 
 
 43
 Since it appears that all counsel assumed that 10 U.S.C. § 6011 was the basic authorization for Navy Regulation C-10310, they have not discussed whether the regulation falls within the scope of 5 U.S.C.A. § 22, the section which does authorize the regulation. The burden of showing invalidity is a heavy one, and certainly the plaintiff has not remotely met that burden. Thus the presumption of validity, if for no other reason, would require that this court hold the regulation valid.
 
 
 44
 Reed directs attention particularly to Navy Regulation C-10313 (and other regulations referred to therein), wherein it is provided that Navy personnel contemplated for discharges other than honorable and for stated reasons other than mere unsuitability have certain so-called privileges as follows: (a) To have his case heard by a board of not less than three officers; (b) to appear (unless in civil confinement or otherwise unavailable) in person before such board; (c) to be represented by counsel who, if reasonably available, should be a lawyer; (d) to submit statements in his own behalf. He argues that these "privileges" are in fact rights which, in order to meet the requirements of constitutionally guaranteed due process, must be provided and protected. The principal thrust of his contention is that Regulation C-10310 is unconstitutional in that it makes no provision for a hearing at which a charge of unsuitability can be considered and determined.
 
 
 45
 Plaintiff relies on Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959), for support of his claim that, without due process of law, he was deprived of his Fifth Amendment rights of liberty ("freedom to practice his chosen profession") and property ("petitioner's employment"). The Department of Defense had denied security clearance to Greene, an executive of a private corporation doing business with the Department where military secrets were involved. The contract between the corporation and the Government required the former to exclude from its premises persons who did not have security clearance. Greene was dismissed from his employment and was unable to secure other employment as an aeronautical engineer, his chosen profession. He challenged the validity of the regulations, issued by the Secretary of Defense without prior express authority of either the President or Congress, which resulted in barring him from access to classified information on the basis of confidential statements made by informants to investigators. The Court held that the regulations, issued without the approval of Congress or the President, were thus invalid to the extent that Greene's rights were denied "on the basis of a fact determination rendered after a hearing which failed to comport with our traditional ideas of fair procedure."[14] The Court, however, expressly refused to speculate on the constitutionality of the regulations had they been approved by Congress or the President. We do not find Greene controlling here.
 
 
 46
 It is true that the regulations, pertinent here, make no provision for a hearing such as Reed contends he should be given prior to his general discharge from the Navy. But Congress has provided for a review of discharges and dismissals from military departments under 10 U.S.C. § 1553. This statute contemplates a mandatory hearing, upon request after discharge, before a board of five members, at which hearing the person requesting review is permitted to appear in person or by counsel. Such review shall be based upon all available records of the military department concerned and such other evidence as may be presented. Witnesses shall be permitted to testify either in person or by affidavit. Certainly at such a hearing Reed would be entitled to present rebutting testimony and to have the decision based upon the record of the matters considered at the hearing. The board is granted the authority (except in case of a discharge or dismissal resulting from the sentence of a general court martial) to change, correct or modify any discharge or dismissal, and to issue a new discharge in accord with the facts presented to the board. Thus the reviewing board is empowered to nullify the action taken if determined to be erroneous and, in lieu thereof, to order an honorable discharge to which Reed claims to be entitled. The findings of the board are subject to review only by the Secretary of the military department affected.
 
 
 47
 Under 10 U.S.C. § 1552, the Secretary of a military department is authorized to correct any military record when he considers it necessary to correct an error or remove an injustice. By this section there is no provision made for a formal hearing at which the serviceman or his counsel may be present and the procedure is not mandatory, yet a civilian board may be called to act in behalf of the Secretary in considering the matter.
 
 
 48
 If Reed were to be given a general discharge under honorable conditions as proposed, he could apply for relief under 10 U.S.C. § 1552 and, if no relief were afforded thereby, he could proceed to obtain the mandatory hearing provided by 10 U.S.C. § 1553.
 
 
 49
 There is no constitutional right to a particular form of remedy. Neblett v. Carpenter, 305 U.S. 297, 59 S.Ct. 170, 83 L.Ed. 182 (1938), rehearing denied, 305 U.S. 675, 59 S.Ct. 355, 83 L.Ed. 437 (1939). A fact-finding hearing prior to discharge is one way to protect plaintiff's alleged rights, but it is not the only means of protection and Congress has provided other ways of preventing injustices and correcting errors in connection with military discharges. By statute, Reed is provided an opportunity to avoid the injury he claims he will suffer when the discharge becomes effective.
 
 
 50
 Since we are of the opinion that 10 U.S.C. § 1553 provides relief in the nature of a full hearing before a Board of Review, we will follow the accepted judicial practice of avoiding the resolution of constitutional issues where an alternative ground for disposing of the case is present. See Boynton v. Com. of Virginia, 364 U.S. 454, 81 S.Ct. 182, 5 L.Ed.2d 206 (1960); Peters v. Hobby, 349 U.S. 331, 338, 75 S.Ct. 790, 99 L.Ed. 1129 (1955); Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).
 
 
 51
 The fact that the hearing provided by statute does not precede, but follows, Reed's separation from the service does not make the hearing inadequate. The statutory review is a part of the protective procedure and due process requirements are satisfied if the individual is given a hearing at some point in the administrative proceedings. See Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 598, 70 S.Ct. 870, 94 L.Ed. 1088 (1950); Inland Empire Dist. Council, etc. v. Millis, 325 U.S. 697, 710, 67 S.Ct. 1316, 89 L.Ed. 1077 (1945); Opp Cotton Mills, Inc. v. Administrator of the Wage and Hour Division, 312 U.S. 126, 152-3, 61 S.Ct. 524, 85 L.Ed. 624 (1941); United States v. Illinois Cent. R. R., 291 U.S. 457, 463, 54 S.Ct. 471, 78 L.Ed. 909 (1934). Those fundamental requirements of fairness which are of the essence of due process in the proceedings pursuant to the pertinent regulations are met by the provisions of the statutes above noted. Whether the absence from the regulations of the protections to which Reed is entitled would violate the demands of the Constitution is not an issue to be dealt with if the statute itself supplies these protections.
 
 
 52
 For the reasons herein stated, the decree of the District Court discharging prior restraining orders and denying plaintiff's request for a temporary and permanent injunction is affirmed without prejudice to the plaintiff's resort to the adequate administrative remedy provided by statute. The injunction pending appeal will be vacated and discharged.
 
 
 53
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 This incident took place aboard a United Air Lines plane en route from San Francisco to Chicago. For approximately two hours prior to landing at Chicago, plaintiff had been screaming and was irrational. As the plane was circling to land at Midway Airport, plaintiff attempted to open the door of the airplane but was restrained. Upon admission to the hospital at Great Lakes, it was determined by final diagnosis that plaintiff was suffering from "Disorders, Psychotic, With Demonstrable Physical Etiology or Associated Structural Change in Brain, Delirium Tremens."
 
 
 [2]
 He relies upon dictum in Schustack v. Herren, 136 F.Supp. 850, 853 (S.D.N.Y. 1955), affirmed 234 F.2d 134 (2d Cir. 1956), and a preliminary holding in Berstein v. Herren, 136 F.Supp. 493, 496 (S.D.N.Y.1955); see also United States ex rel. Roberson v. Keating, 121 F.Supp. 477, 479 (N.D.Ill.1949), where it is held that "an honorable discharge is an extremely valuable property right as well as a personal right * * *."
 
 
 [3]
 We note that in Michaelson [242 F.2d 695] there was an allegation that "`the service of a Dishonorable Discharge upon the plaintiff would be a capricious, arbitrary and illegal acts (sic) * * * in violation of the Fifth Amendment of the Constitution of the United States,'" but this point apparently was not pressed before the Court of Appeals for the Second Circuit. The crux of the plaintiff's case there seemed to be that the Army's evidence did not support the findings of the military tribunal appointed to determine his unsuitability for purposes of his being issued an Undesirable Discharge. The court treated plaintiff's constitutional claim as a frivolous one on the basis of the complaint. We agree that the civil courts have no authority to simply review the evidence adduced at a military administrative hearing
 
 
 [4]
 "C-10310. Discharge of Enlisted Personnel by Reason of Unsuitability
 "(1) Enlisted personnel may be separated, by reason of unsuitability, with an honorable or general discharge, as warranted by their military record. Such discharge regardless of attendant circumstances, will be effected only when directed by or authorized by the Chief of Naval Personnel. Discharge by reason of unsuitability will not normally be issued in lieu of disciplinary action except upon the determination by the Chief of Naval Personnel that the interests of the service as well as the individual will best be served by administrative discharge. From time to time the Chief of Naval Personnel may issue special instructions to certain field activities for the elimination of the unsuitable among enlisted personnel.
 "(2) Attention is directed to article C-10313 which prescribes the procedure for submission of reports and recommendations for discharge by reason of unsuitability.
 "(3) Discharges by reason of unsuitability are effected to free the service of persons considered unsuitable for further naval service because of:
 * * * * *
 "(e) Alcoholism: chronic, or addiction to alcohol (frequently a manifestation of a basic defect in personality development).
 * * * * *
 "(g) Other good and sufficient reasons, as determined by the Chief of Naval Personnel."
 
 
 [5]
 Navy Regulation C-10310 (32 C.F.R. § 730.10 (Supp.1961)), found at 24 Fed. Reg. 7441, 7447 (1959)
 
 
 [6]
 10 U.S.C. § 1162 (1958) provides for the issuance of regulations dealing with the discharge of reservists. Apparently Reed is a member of the Regular Navy. 10 U.S.C. §§ 6291-6298 (ch. 569) (1958) provide generally for the discharge of enlisted men, but there is no mention of a general discharge or any discharge other than honorable except in § 6297(b), which deals with the disposition of uniforms when a person receives a discharge other than honorable
 
 
 [7]
 These regulations have now been superseded by 32 C.F.R. § 41.1 et seq. (1961), but there is no question as to the applicability of the 1959 regulations to Reed's discharge
 
 
 [8]
 10 U.S.C. § 1162 and chs. 361, 569, and 861 (1958)
 
 
 [9]
 See introductory note at 24 Fed.Reg. 7441 (1959):"Scope and Purpose. Subchapter [dealing with military personnel] is amended by insertion of new Part 730 [dealing with administrative discharges from the Navy] which contains Navy and Marine Corps regulations implementing the Department of Defense provisions concerning administrative discharges and published in Part 44 of this title [32 C.F.R.] as recently revised. (24 F.R. 1704)."
 
 
 [10]
 The court notes the fact that the Navy regulation in question was not issued within ninety days from the issuance of the Department of Defense regulations, but we construe the language requiring the issuance of regulations by each of the Armed Forces within ninety days as directory and not mandatory. It is clear that the regulation C-10310 was in effect at the time that Reed's discharge was under consideration by the Navy
 
 
 [11]
 "Sec. 1547. The orders, regulations, and instructions issued by the Secretary of the Navy prior to July 14, 1862, with such alterations as he may since have adopted, with the approval of the President, shall be recognized as the regulations of the Navy, subject to alterations adopted in the same manner."
 
 
 [12]
 70A Stat. 643 (1956)
 
 
 [13]
 The preceding section specifically states that the regulations are applicable to the Navy, among others
 
 
 [14]
 360 U.S. at 508, 79 S.Ct. at 1419