The judgment of the district court will be affirmed.

James E. PEPPERS, Appellee,

v.

The UNITED STATES ARMY and those who hold the offices of Secretary of the Army and The Adjutant General of the United States Army, Appellant.

No. 72-1508.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 8, 1972.

Decided May 30, 1973.

---

4. We merely note, with respect to Rule 56 (b)(4), that the courts are divided as to the constitutional validity of pre-admission residence requirements. Compare Keenan v. Board of Law Examiners of the State of North Carolina, D.C.N.C.1970, 317 F.Supp. 1350; Webster v. Wofford, D.C.Ga.1970, 321 F.Supp. 1259; Lipman v. Van Zant, D.C.Miss.1971, 329 F.Supp. 391; and Potts v. Honorable Justices of the Supreme Court of Hawaii, D.C. Hawaii 1971, 332 F.Supp. 1392; with Suffling v. Boudurant, D.C.N.M.1972, 339 F.Supp. 257.

80

Robert E. Kopp, Atty., U. S. Dept. of Justice (Harlington Wood, Jr., Asst. Atty. Gen., John K. Grisso, U. S. Atty., Morton Hollander, Atty., U. S. Dept. of Justice, on brief), for appellant.

Frank Sloan, Columbia, S. C., for appellee.

Before HAYNSWORTH, Chief Judge, BOREMAN, Senior Circuit Judge, and WINTER, Circuit Judge.

BOREMAN, Senior Circuit Judge:

James E. Peppers enlisted in the United States Army and served on active duty from September 7, 1942, until September 18, 1943. He was discharged on the latter date "under other than honorable conditions" because of "traits of character" which rendered his retention in the service "undesirable." His was the well-known "Section VIII" or "blue" discharge under the then current Army Regulation 615–360. A Board of Officers conducted a hearing and had before it the opinion of Capt. Vincent L.

Frankfurth of the Medical Corps, a neuropsychiatric consultant, that Peppers suffered from a "constitutional psychopathic state, inadequate personality with emotional instability." The Board of Officers also considered the opinion of one Second Lieutenant Jack Buchwald that Peppers was a "gold brick," that he had been involved in several fights with noncommissioned officers and was untrustworthy. The Board found that Peppers' character was "poor" and that he was "unfit to associate with enlisted men," and recommended a "blue" discharge, which recommendation was accepted and became the decision of the Army.

At the time of his discharge Peppers' Army disciplinary record included: (1) sentence by a special court-martial to forfeiture of $18.00 pay per month for four months plus confinement for four months at hard labor for being "disorderly in uniform in a public place," with the execution of the sentence suspended insofar as it related to confinement; (2) sentence by a summary court-martial to forfeiture of $18.00 pay plus confinement for thirty days at hard labor for being absent without leave, with the execution of the sentence suspended insofar as it related to confinement; and (3) five periods of absence without leave totaling sixty-seven days for which he served seventy-three days in confinement in informal or "company" punishment without trial, or while awaiting review of trial. In the district court Peppers contended that his service record was not before the Board of Officers which recommended his discharge but there has been no finding as to this contention and the record before us does not conclusively demonstrate that the Board was unaware of his service record.

In 1946, Peppers, acting *pro se,* applied to the War Department Discharge Review Board to have his discharge changed to "honorable." In his submitted statement to the Review Board Peppers did not deny the various fights and absences without leave which had led to

his disciplinary record in the Army but rather sought to justify these occurrences by giving his version of their factual background. In the final paragraph of his statement Peppers claimed: "At the discharge board I was told the blue discharge would not interfer [sic] with me getting a defense job and that was untrue, I feel injustice was done in that very much." On May 29, 1947, the Review Board found that the action of the discharge board had been in accordance with AR 615–360, Section VIII, that the discharge board's action was amply supported by the evidence, and that no additional evidence of sufficient weight and credibility to warrant reversal had been adduced. The Review Board accordingly denied the requested relief.

Approximately twenty years later, on June 26, 1967, with the assistance of the American Legion, Peppers filed an application with the Army Board for Correction of Military Records [1] for a change of his discharge to "honorable." The Correction Board referred the matter to the Army Discharge Review Board for a "rehearing" of its decision of May 29, 1947.[2] On December 5, 1967, the Discharge Review Board conducted a hearing at which Peppers appeared together with his representative as furnished by the American Legion. Peppers testified at length as to his version of the incidents which led to his discharge. He again claimed that at the time of the discharge proceedings in 1943 he was told that a "blue" discharge would not affect his employment opportunities, and contended that the dis-

charge hearing was a mockery since "there was no counselling, no person to guide you at all whatsoever." On December 12, 1967, the Discharge Review Board concluded that Peppers was properly discharged and that his application for relief should be denied.

On February 20, 1968, Peppers reapplied to the Army Board for Correction of Military Records for correction of his discharge. This Correction Board, upon review of the records, declined to afford Peppers another hearing, 32 C.F.R. § 581.3(c)(5) (1968), and on October 3, 1968, denied relief, noting that insufficient evidence had been presented to indicate probable material error or injustice.

On April 5, 1971, Peppers brought this action in the district court to have his "blue" discharge set aside and to compel the Army to correct his military records in order to change the character of his discharge to honorable. The court accepted jurisdiction under 28 U.S.C. § 1361. Peppers filed a motion for summary judgment and, in an affidavit in support thereof, asserted that his "disciplinary difficulties were the result of ignorance, very limited education, and inability to communicate with his superiors, complicated by his financial inability to care for his wife and children." He again claimed that he was told at the discharge hearing that the "blue" discharge would not interfere with his obtaining civilian employment and claimed, additionally, that his superiors "further wrongfully connived and abetted in obtaining his wrongful discharge by failing to give him either mental or physi-

---

1. The Army Board for Correction of Military Records is established pursuant to 10 U.S.C. § 1552. *See* 32 C.F.R. § 581.3 (b)(1) (1967). Normally, application for relief to this Board must be made within three years after the asserted error or injustice is discovered, but a failure to file within the three-year period may be excused if the Board finds it to be "in the interest of justice." 10 U.S.C. § 1552 (b); 32 C.F.R. § 581.3(c)(2) (1967). Peppers requested that such a finding be made in his case.

2. The Army Discharge Review Board is established pursuant to 10 U.S.C. § 1553. *See* 32 C.F.R. § 581.2(a)(1) (1967). Normally the Discharge Review Board is precluded from considering requests for changes made more than fifteen years after the date of discharge. Here, however, the Correction Board referred Peppers' application to the Discharge Review Board for a "rehearing" of the latter's 1947 determination.

cal examination before discharge." Peppers stated that he had never met Capt. Frankfurth, the "neuropsychiatric consultant," and that Capt. Frankfurth was not present at the discharge hearing, at least to Peppers' knowledge. He asserted that statements in his service record to the effect that he had at the discharge hearing verified the purported testimony of Capt. Frankfurth and Lt. Buchwald were incorrect. Further, Peppers claimed: "As a result of these false and misleading statements and acts, deponent offered no defense or objection at the discharge hearing, and was deprived of his rights by fraud and deceipt [sic] in violation of due process of law."[3]

After a hearing,[4] the district court vacated the 1943 discharge and remanded the case to the Army for further proceedings with the direction that Peppers be given an honorable discharge if further proceedings were not instituted within 180 days. The Court stated, "After reviewing the entire record, the Court concludes that irrespective of the facts concerning plaintiff's conduct, the procedure used by defendants, namely the discharge hearing and surrounding circumstances, was a blatant violation of due process."

■ The district judge found due process denial in the following respects: (1) Peppers was ignorant, uneducated and without counsel, and thus unable to conduct a proper cross-examination of the witnesses against him; (2) he did not understand the consequences of a "blue" discharge and it was "probable" that he was misled as to its effect on his ability to obtain civilian employment; (3) there was no evidence that the Army gave Peppers a physical or mental examination before discharge; (4) Peppers "stated that" Capt. Frankfurth was not present at the discharge hearing, and "he also denies that" he verified the testimony of Capt. Frankfurth and Lt. Buchwald; and (5) due to Peppers' education and background the Army should have taken extra precautions on his behalf, i. e., he "should have received psychiatric evaluation and the benefit of counsel and a Chaplain." All of these violations and inadequacies as found by the district court concerned the 1943 discharge hearing.[5]

This court has had occasion to consider a claim of violation of due process rights in connection with the discharge of a Navy enlisted man and to examine and apply pertinent statutory provisions and regulations. In Reed v. Franke, 297 F.2d 17 (4 Cir. 1961), a Navy enlisted man (Reed) sought to prevent his separation from naval service with a "general discharge under honorable conditions" which was unacceptable to him. The pertinent regulations under which he was to receive his discharge made no provisions for a hearing prior to discharge. Reed argued that the failure to provide such a hearing constituted a denial of due process. In holding against Reed, this court stated, 297 F.2d at 26–27:

It is true that the regulations, pertinent here, make no provision for a hearing such as Reed contends he should be given prior to his general discharge from the Navy. But Con-

---

3. Peppers' affidavit contained a number of additional factual assertions which were intended to supplement the administrative record and to support his contention that he had been treated unfairly by the Army. Noted in this opinion are only those assertions which appear to have been relied upon by the district court in reaching the conclusion, as hereinafter set forth in the text, that Peppers had been denied administrative due process of law.

4. It was at this hearing that Peppers contended that his service record was not

before the Board of Officers which recommended his discharge.

5. In reaching the conclusion that Peppers had been denied due process of law the district judge relied in part upon factual claims not presented by Peppers at the administrative level. Such reliance was improper and must be disapproved. "The [district] court's function . . . was confined to a review of the evidence submitted to the Board for Corrections." Sanford v. United States, 399 F.2d 693, 694 (9 Cir. 1968).

gress has provided for a review of discharges and dismissals from military departments under 10 U.S.C. § 1553. This statute contemplates a mandatory hearing, upon request after discharge, before a board of five members, at which hearing the person requesting review is permitted to appear in person or by counsel. Such review shall be based upon all available records of the military department concerned and such other evidence as may be presented. Witnesses shall be permitted to testify either in person or by affidavit. Certainly at such a hearing Reed would be entitled to present rebutting testimony and to have the decision based upon the record of the matters considered at the hearing. The board is granted the authority (except in case of a discharge or dismissal resulting from the sentence of a general court martial) to change, correct or modify any discharge or dismissal, and to issue a new discharge in accord with the facts presented to the board. Thus the reviewing board is empowered to nullify the action taken if determined to be erroneous and, in lieu thereof, to order an honorable discharge. . . .

Under 10 U.S.C. § 1552, the Secretary of a military department is authorized to correct any military record when he considers it necessary to correct an error or remove an injustice. By this section there is no provision made for a formal hearing at which the serviceman or his counsel may be present and the procedure is not mandatory, yet a civilian board may be called to act in behalf of the Secretary in considering the matter.

. . . . . ..

There is no constitutional right to a particular form of remedy. . . . A fact-finding hearing prior to discharge is one way to protect plaintiff's alleged rights, but it is not the only means of protection and Congress has provided other ways of preventing injustices and correcting errors in connection with military discharges.

By statute, Reed is provided an opportunity to avoid the injury he claims he will suffer when the discharge becomes effective.

. . . . . .

The fact that the hearing provided by statute does not precede, but follows, Reed's separation from the service does not make the hearing inadequate. The statutory review is a part of the protective procedure and due process requirements are satisfied if the individual is given a hearing at some point in the administrative proceedings. . . . Those fundamental requirements of fairness which are of the essence of due process in the proceedings pursuant to the pertinent regulations are met by the provisions of the statutes above noted.

The text of 10 U.S.C. § 1553 was ·changed in 1962, the year following the *Reed* decision, but the nature and extent of the hearing, provision for which is made in that section, were not substantially altered.

If the procedures established by 10 U.S.C. §§ 1552 and 1553 are sufficient to satisfy the requirements of due process where there is no hearing whatsoever prior to discharge, as in *Reed, supra, a fortiori* those procedures under those sections would satisfy the requirements of due process where, as in the instant case, a hearing prior to discharge is held but is found to be inadequate.

 We hold that the review of Peppers' discharge by the Discharge Review Board in 1947 and the reconsideration thereof in 1967 after a full hearing, together with the review in 1968 by the Army Board for Correction of Military Records, effectively served to remedy any possible violation of due process which may have been inherent at the 1943 discharge proceedings.

 As to the postdischarge proceedings themselves, it is clear in view of Peppers' Army disciplinary record that the rulings of the Army Discharge Review Board and the Army Board for Correction of Military Records cannot

be considered arbitrary and capricious. Beyond that determination this court has no power to look. Haines v. United States, 453 F.2d 233 (3 Cir. 1971); Ragoni v. United States, 424 F.2d 261 (3 Cir. 1970).

Reversed.